WILLIAM T. MASSEY, plaintiff in error, vs. AQUILLA CALHOUN, defendant in error.

The 20th section of the Act of 1851—2 (*Pamphlet pp.* 97, 98) prohibiting Ordinaries and their legal partners from practising or giving counsel in cases originating in their Courts or connected therewith, expounded.

Assumpsit, from Bibb. Tried before Judge LAMAR, June Term, 1858.

This was action of assumpsit by William Massey against Aquilla Calhoun for the recovery of one hundred dollars, for professional services rendered as an attorney at law.

The defendant came to E. A. Nisbet and stated that the parties had agreed to leave the construction of the will of his father to Nisbet, Poe, and the Ordinary. Plaintiff was the

Ordinary, and was present and took part in the consultation at the office of Poe &˙Grier, and not on a day of the Court of Ordinary.

The only question submitted for their legal opinion was, " whether Mrs. Cason, formerly widow of the testator, El-bert Calhoun, was entitled to any share of the property willed to young Elbert Calhoun, who had died without issue and before reaching twenty-one years of age." The legal opinion was in writing, and admitted in evidence, to the ad-mission of which plaintiff excepted.

The question of the necessity of any administration on young Calhoun's estate was not before them in consultation, and was introduced into the opinion by Judge Nisbet mere-ly for illustration and advice, after the consultation was end-ed and the attornies dispersed.

The following are all the provisions of Mr. Calhoun's will which are material to the understanding of the case, and question submitted.

E. Calhoun bequeathed to his son Elbert, negroes and land—to his wife several negroes for life, and all the lands and plantations he might die possessed of during her life; also all his stock and all other property which he might die possessed of, not given away in his will; and further says, " she is to have them for her use, and all the negroes I have given away, until each heir becomes of age, for the purpose of raising, maintaining and schooling them." He further wills that at the death of his wife, his son Elbert shall have all the personal property, and that the negroes left to her shall be divided among his heirs; and proceeds to divide them specifically, giving two of them which he names to Elbert.    Also, " that if my son Elbert Calhoun should be-come of age during his mother's life, that he have possession of half the land I have given her in this my will, reserving the house for his mother during her life;" and that " if ei-ther of my children should die without issue, then and in that event the property I have given to them be returned,

and become part of my estate, and be equally divided among the surviving heirs." He, in addition, provides that if his wife should die before the children become of age, his executors shall keep all his property together, and keep up his plantation for the use and benefit of the child or children that may not be of age, and whatever shall be made, it shall be for the use and benefit of those that are not of age.

The legal opinion of those employed in the consultation was, that Mrs. Cason was entitled to share in the property of young Calhoun.

Defendant's counsel moved a non-suit, insisting that the account of one hundred dollars, which Massey, the Ordinary, had charged defendant for professional services in the consultation, and which he had sued on, was for services rendered in opposition to the laws of this State, which prohibit Ordinaries from practising in their own Court, or acting as attornies in matters therewith connected; which motion was sustained, and a non-suit awarded; whereupon plaintiff excepted to said decision, and assigns the same as error.

JOHN RUTHERFORD, for plaintiff in error.

L. N. WHITTLE, for defendant in error.

*By the Court.*—LUMPKIN J. delivering the opinion.

The 20th section of the Act of 1851-2 (*Pamphlets pp.* 97 98) provides "That it shall not be lawful for the Ordinary, nor any legal partner of said Ordinary, to practice in said Court of Ordinary, or be retained as counsel in any cause originating in said Court and carried by appeal or writ of error to any higher Court; nor shall said Ordinary or his legal partner receive any fee or reward for any service rendered or counsel given in any matter connected with said Court, other than the fees authorized by law to said Ordinary; and any Ordinary violating the provisions of this section or per-

mitting its violation by any legal partner practising in said Court before him, shall be guilty of a misdemeanor, and on conviction shall be fined and imprisoned at the discretion of the Court, and shall forfeit his commission, and shall be ineligible to re-election: *Provided* nothing in this section shall prevent said Ordinary from practising in any other cause in any other Court."

Does the case made by the record come within the prohibition of this Act?

We propose to examine this question in two aspects—the one as presented by the written opinion itself; and the other as it appears from the testimony of Judge Nisbet. Taking the written opinion alone, and the case is free from doubt or difficulty. The advice given as to the propriety of dispensing with any administration upon the estate of young Elbert Calhoun, who resided in Bibb county at the time of his death, is touching a matter directly connected with the Ordinary's office and Court.

But take the case as presented by the evidence of Judge Nisbet. He testifies that the only thing submitted to counsel was, whether Mrs. Cason, formerly the wife of old Elbert Calhoun, took any portion of the property left to her son Elbert, who died a minor, and without issue.

It is argued that this involves a question of the construction of a will; and that this Court held in 21*st Georgia Reports*, in the case of *Beall against Drane*, that the office of construing wills belonged to the Courts of Chancery, and not to the Courts of Ordinary. In the case cited, it was insisted that certain clauses in the will of Beall were void on account of their uncertainty. And this Court decided that it was not competent for the Ordinary to pass upon that point. There are cases, however, where it may become absolutely necessary for the Ordinary to construe a will. And is not this case one of them?

Counsel in this case advised that the property bequeathed to young Elbert Calhoun by his father, reverted to the estate;

and was subject to distribution amongst all of the testator's heirs at law. And that Mrs. Cason, the widow, shared in the distribution with her children. Suppose the executor of old man Calhoun's will had distributed the whole of the property to the brothers and sisters of young Elbert Calhoun, and Mrs. Cason had appeared before the Ordinary and contested his return, as it was her privilege to do ; or assume that no opposition had been made at the time, yet when the executor sought, upon citation, to be dismissed, Mrs. Cason had appeared and resisted his discharge upon the ground that this property had not been legally divided, she being excluded, would not the Ordinary have been compelled to decide the question?

The very question, then, which upon consultation with the other counsel, William Massey gave his professional opinion, might and likely would have been presented for his judicial determination. It was a matter, then, in the language of the statute, " connected with his Court."

Ordinaries should forbear to be mixed up, as lawyers, with anything appertaining to testate's or intestate's estates which belong to their office. In the present case, it is needless to remark that the character of the incumbent forbids the idea that he intended to violate or disregard the law. The character of the gentlemen associated with him equally precludes any such belief. It was an error of judgment which all men are liable to commit. It was designed that Ordinaries should be the gratuitous counsellors of all trustees having business connected with their Courts. It is an office of transcendent importance. All estates are constantly passing through it. For it is not more sure that we shall all die, than it is that every estate has to pass under the review of the Ordinary. To give full force and effect to the law, we are constrained, however reluctantly, in this instance, to affirm the judgment of the Court below. We are fully persuaded that it was right.

Judgment affirmed.